IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| KEENAN KESTER COFIELD | * | |
| Plaintiff, | | |
| v. | * | CIVIL ACTION NO. CCB-05-2061 |
| | | |
| STATE OF MARYLAND | * | |
| HON. ROBERT L. EHRLICH, JR. | | |
| MARY ANN SAAR | * | |
| FRANK C. SIZER, JR. | | |
| NANCY C. ROUSE | * | |
| CORRECTIONAL MEDICAL SERVICES, | | |
| INC. | * | |
| WARDEN, DOC/MEDICAL SERVICES | | |
| DR. OLASUPO ODUNSI | * | |
| CHARLOTTE WALKEY, RN | | |
| DOREEN JENKINS, LPN | * | |
| FREWEINI MENGHISTEAB, PA | | |
| TERESA SHUMAN, LPN | * | |
| A. BLACK, RN | | |
| MAILROOM SUPERVISOR RITA ORR | * | |
| Defendants. | | |
| | *** | |

**MEMORANDUM**

I. *Background*

This 42 U.S.C. § 1983 civil rights case was received for filing on July 27, 2005.  The original cause of action involves plaintiff's allegations that various state and medical personnel were denying him: (i) proper medical care for alleged injuries he experienced at the Maryland Correctional Institution in Hagerstown ("MCIH") when he slipped and fell in the prison shower on June 26, 2005; (ii) his property right in monies deposited into his prison account; and (iii) access to the courts due to inadequacies in the prison libraries and unavailability of writing materials or a "legal welfare package."  Paper No. 1.

Plaintiff was thrice granted leave to amend his complaint to add additional parties and to include claims that: (i) medical personnel failed to refill his prescriptions in August, 2006; (ii)

corrections personnel failed to protect him from an August 10, 2005, prisoner assault;[1] (iii) prison policy effectively prevents him from telephoning his attorney during working hours; (iv) prison personnel have delayed his legal mail; and (v) the Division of Correction ("DOC") has impermissibly added time to his sentence without court order.  Paper Nos. 6, 29 & 33.

Currently pending is defendant Correctional Medical Services, Inc.'s ("CMS") motion to dismiss or, in the alternative, for summary judgment, which will be treated as a motion for summary judgment.[2]  Paper No. 14.  In addition, defendants State of Maryland, Ehrlich, Saar, Sizer, Rouse, and Orr ("State defendants") have likewise filed motions to dismiss or, in the alternative, for summary judgment.  Paper Nos. 25 & 41.  Plaintiff has filed various opposition materials and a motion for summary judgment.[3]  Paper Nos. 59, 60, 61, 63, & 64.  CMS has filed an opposition to plaintiff's motion for summary judgment.  Paper No. 62.  A hearing is not needed to resolve the issues presented.  *See* Local Rule 105.6. (D. Md. 2004).  For reasons which follow, the court shall grant defendants' motions.

## II.  *Standard of Review*

### Motion to Dismiss

A court reviewing a complaint in light of a Rule 12(b)(6) motion accepts all well-pled allegations of the complaint as true and construes the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff.  *See Ibarra v. United States*, 120 F.3d 472, 473

---

[1]    Plaintiff also complained that he was not provided a fan for his cell per the order of medical personnel.  Paper No. 6.

[2]    Service of process was stayed on medical defendants Odunsi, Walkey, Jenkins, Menghisteab, Shuman, and Black.   Paper No. 34.

[3]    A number of documents filed by plaintiff in his motion for summary judgment and supplemental brief in support involve complaints and pleadings previously submitted to the court.  Paper No. 60, Exs. A-E; Paper No. 64, Exs. A-C.

(4th Cir. 1997).  Such a motion ought not to be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  A court, however, need not accept unsupported legal conclusions or pleaded facts, *see Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), or conclusory factual allegations devoid of any reference to particular acts or practices.  *See United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

## Motion for Summary Judgment

It is well established that a motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(c);  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The moving party bears the burden of showing that there is no genuine issue as to any material fact.  No genuine issue of material fact exists, however, if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof.  *See Celotex*, 477 U.S. at 322-323.  Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

With these standards in mind, the court will examine plaintiff's claims against the medical and state defendants *seriatim*.

## III.  *Analysis*

### Claims against Medical Defendants

Plaintiff complains that he was denied medical care for injuries sustained following a fall in a MCIH prison shower in June 2005 and an assault by another inmate in August 2005.  He further

claims that he was not provided a fan for his asthma condition while housed in segregation in August 2005, and that medical personnel failed to timely refill his prescriptions in spite of a number of sick call requests submitted in August 2005.

In alleging that he was denied his Eighth Amendment right to necessary medical care plaintiff must prove two essential elements.  First, he must satisfy the "objective" component by illustrating a serious medical condition.  As to this component, an inmate must show that "he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer v. Brennan*, 511 U.S. 835, 114 S.Ct. 1994, 1977 (1994).  This first prong embraces delays in medical treatment when such delays severely exacerbate an inmate's injuries. *See, e.g.*, *Martin v. Gentile*, 849 F.2d 863, 871 (4th Cir. 1988), *Harden v. Green*, 27 Fed. Appx. 173, 2001 WL 1464468, at *3-4 (4th Cir. 2001), *Blackmore v. Kalamazoo County*, 390 F.3d 890, 896-98 (6th Cir. 2004).  As the Eleventh Circuit observed, however, "delay or even denial of medical treatment for superficial, nonserious physical conditions does not constitute an Eighth Amendment violation."  *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994), *abrogated in part on other grounds by Hope v. Pelzer*, 536 U.S. 730, 739 n. 9 (2002).

If this first objective element is satisfied, plaintiff must then prove the second "subjective" component of the Eighth Amendment standard by showing deliberate indifference on the part of defendants.  *See Wilson v. Seiter*, 501 U.S. 294, 303 (1991) (holding that claims alleging inadequate medical care are subject to the "deliberate indifference" standard).  "[D]eliberate indifference entails something more than mere negligence [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result."  *Farmer*, 511 U.S. at 835.  Medical personnel "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference." *Id*. at 837.

Medical staff are not, however, liable if they "knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent."[4]  *Id*. at 844; *see also Johnson v. Quinones*, 145 F.3d 164,167 (4th Cir. 1998).

In its summary judgment motion, CMS maintains that plaintiff received constitutionally adequate medical care.  It submits that he was transferred to MCIH on March 17, 2005, with a history of hypertension, dry skin, and asthma.[5]  Paper No. 14, Exs A & C.  CMS further states that prior to his alleged June 26, 2005, fall, plaintiff had thrice been provided non-steroidal anti-inflammatory drugs ("NSAIDs") to be taken as needed.  *Id*.

CMS acknowledges that plaintiff submitted several sick-call request forms seeking treatment for his back after slipping in the shower.  They state, however, that when plaintiff was examined on June 30, 2005, for a June 23, 2005 request for foot cream, Motrin, and tetracycline, he made no mention of any fall.  *Id*.  Dr. Odunsi maintains that he examined plaintiff in the Pulmonary Clinic on July 11, 2005, for an evaluation of plaintiff's asthma and plaintiff offered no complaints of dizziness, shortness of breath, or chest pain and did not complain of any back or leg pain.  *Id*.  Odunsi affirms that plaintiff expressed a desire to work and was approved for light duty.  *Id*.

According to the CMS materials, on July 15, 2005, plaintiff complained of pain in his back and leg from a fall in the shower.  *Id*.  The medical defendants state that the sick-call form was not received until July 17, 2005, and plaintiff was evaluated by Nurse Doreen Jenkins on July 20, 2005.  *Id*.  Plaintiff was found to have no objective signs of edema or difficulty walking and was provided

---

[4]   "[A]ny negligence or malpractice on the part of . . . doctors in missing [a] diagnosis does not, by itself, support an inference of deliberate indifference."  *Johnson v. Quinones*, 145 F. 3d at 166.  Without evidence that a doctor linked presence of symptoms with a diagnosis of a serious medical condition, the subjective knowledge required for Eighth Amendment liability is not present.  *Id*. at 169 (actions inconsistent with an effort to hide a serious medical condition refute presence of doctor's subjective knowledge).

[5]   Records show that plaintiff is provided an Albuterol inhaler for his asthma.  Paper No. 14, Ex. C.

20 tablets of Motrin to be taken every four to six hours.  *Id.*  Plaintiff was also scheduled for an August 1, 2005 appointment with a physician's assistant ("P.A.").  *Id.*

On July 28, 2005, plaintiff was evaluated by P.A. Freweini Menghisteab for complaints of chronic lower back pain and a foot rash.  *Id.*  Menghisteab noted that plaintiff had a full range of motion ("ROM") and full flexion extension of his spine and prescribed an antifungal cream for plaintiff's feet and muscle rub ointment and Motrin for plaintiff's back complaints.  *Id.*

According to the medical record, on August 10, 2005, plaintiff submitted a sick-call form claiming that he had been assaulted and slapped on the left side of his face.  Paper No. 14, Exs. A & C.  Nurse Bernadette Wootten examined plaintiff that same date and made objective findings of left periorbital and facial swelling with decreased ROM of the neck.  *Id.*  Plaintiff was referred to a P.A., given NSAIDs, and educated about neck injuries.  *Id.*  Nurse Wootten also gave approval for plaintiff to have a loaner fan while housed in a segregation cell due to his asthma.  *Id.*

CMS asserts that plaintiff submitted sick-call requests in August 2005, complaining of continued pain from the August 10, 2005 assault and the need to obtain medication refills.   It claims, however, that the requests were not received by CMS employees until August 29 and August 30, 2005.  *Id.*  CMS maintains that plaintiff was examined by P.A. Menghisteab on September 5, 2005.  *Id.*  The progress notes and treatment record indicate that plaintiff offered no complaints.  *Id.*, Ex. C at 18.  The P.A. noted that plaintiff was seeking medical refills and had a history of chronic lower back pain and allergic rhinitis.  *Id.*  Menghisteab prescribed chlortrimeton ("CTM"), muscle rub ointment, and Motrin as needed ("PRN") for plaintiff's complaints.  *Id.*

CMS asserts that as plaintiff failed to comply with filing procedures for sick-call and prescription refill request forms, his sick-call requests were not immediately received and his refill

requests could not be immediately processed.[6]  It nonetheless counters that plaintiff was seen for sick-calls soon after medical personnel received his requests and had his prescriptions refilled once he actually followed proper procedures.  *Id.*

In his opposition materials and summary judgment motion, plaintiff claims that he filed numerous sick-call requests, but was provided no treatment for injuries after his fall and assault.[7]  Paper No. 60.  He further complains that medical personnel are not adhering to their own policy, which requires an inmate to be screened within 48 hours of the submission of a sick-call request, and suggests that prison personnel have acknowledged a problem with the prescription refill process.  Paper Nos. 59 & 60.

The court has reviewed all documents and makes the following observations.  When seen by medical personnel on several occasions in June and July 2005, plaintiff either offered no complaints regarding back or leg pain from a fall in the shower or did in fact complain about pain from a fall and was evaluated by medical personnel.  The materials indicate that examinations of plaintiff revealed no swelling, difficulty walking, or ROM limitations.  Medical staff ordered NSAIDs and muscle rub ointment to treat plaintiff's claims of back pain.  The records further reveal that upon receipt of plaintiff's sick-call request regarding the August 10, 2005 assault, medical

---

[6]    The medical defendants suggest that plaintiff did not hand in his sick-call request/encounter forms at the time he filled them out and did not comply with protocols and procedures for medication refills.  Paper No. 14, Exs. A-C.

[7]    Plaintiff complains, for the first time, that the shower area is unsafe due to standing water, a high access wall, and slippery conditions.  Paper No. 60.  He further asserts that his placement in segregation was illegal under *Massey v. Secretary, Dep't of Public Safety and Correctional Services***, 389 Md. 496, 886 A.2d 585 (Md. 2005) (directives of the Secretary of Department of Public Safety and Correctional Services dealing with inmate discipline and the procedures for charging offenses constituted regulations under Maryland Administrative Procedure Act ("APA"), and thus, to be legally effective, were to be adopted in conformance with the APA).  *Id.*  Plaintiff additionally complains about his access to typewriters and postage, the double-celling of inmates, and prison overcrowding.  *Id.*  He also raises additional claims regarding the course of medical treatment he has received in 2006.  *Id.*  The CMS opposition primarily responds to this latter claim.  Paper No. 62.  Plaintiff further complains about the refusal to provide him a bottom bunk.  Paper No. 63.  Plaintiff shall not be allowed to add these eleventh-hour claims to his complaint.

personnel saw him that same date for facial swelling and decreased ROM of the neck.  He was provided NSAIDs, referred to a P.A., educated about neck injuries, and approved for a loaner fan. It does not appear, however, that plaintiff was next seen by a P.A. until September 5, 2005, at which time he offered no complaints.

With regard to plaintiff's complaint about formulary refills, the record shows that his requests for refills were dated August 17, 27, and 30, 2005, and related to Motrin, a muscle relaxer, Tetracycline for his face, and fungal cream.  His refill requests were logged in by medical personnel on August 29 and 30, 2005.  He was seen by a P.A. on September 5, 2005, voiced no complaints, but was given a prescription for CTM, Motrin PRN, and muscle rub for rhinitis and chronic back problems.

Plaintiff, who complains that subsequent delays in receipt of medical treatment and refills rose to a constitutional violation, must show a resulting detrimental effect of the delays sufficiently deleterious to satisfy the objective component of the Eight Amendment prohibition against cruel and unusual punishment.  *See Shakka*, 71 F.3d 162, 166 (4th Cir. 1995) ("[O]nly extreme deprivations are adequate to satisfy the objective component of an Eighth Amendment claim."), *Gentile*, 849 F.2d at 871; *accord Green*, 2001 WL 1464468, at *3.  The record reveals that plaintiff was evaluated and provided medication for his complaints.  Undoubtedly, there were delays in responding to plaintiff's sick-call and prescription refill requests from June, July, and August 2005.  The parties dispute the reasons for the delays, with CMS indicating that any slowness in responding to the request/encounter forms was caused by plaintiff's non-compliance with sick-call and prescription refill request procedures.

Whatever the reasons for these delays, plaintiff has failed to demonstrate that they exacerbated any alleged back, leg or head injuries.  Further, there is no showing that any delays in

receiving these basic medications, *e.g.*, muscle rub, tetracycline, Motrin, and fungal cream, caused adverse consequences.  Not only has plaintiff failed to show adverse effects from the delays, but additional medical records submitted by CMS show no evidence of later complaints for back, leg, neck, or facial problems related to the alleged fall and assault.  Indeed, the record shows that when seen by a physician in July 2005, and a P.A. in September 2005, plaintiff indicated his wish to be assigned to a job at MCIH.  The court, therefore, finds no constitutional violation with regard to the medical care provided to plaintiff.  Defendant CMS's motion for summary judgment shall be granted.[8]

Claims Against State Defendants

Plaintiff takes issue with: (i) the DOC policy of placing inmate deposits exceeding $250.00 on hold in interest-bearing accounts; (ii) the lack of complete legal reference and research materials in the prison libraries, the unavailability of writing materials, the inability to telephone his attorney during working hours, and the delays in prison legal mail; (iii) the inmate assault he suffered on August 10, 2005; (iv) his failure to receive an exhaust fan per medical staff recommendation; and (v) the manner in which his sentences are set out in his commitment record.

Title 42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  The Supreme Court has interpreted the language of this provision broadly, holding that the phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  Plaintiff's prisoner complaint falls under the

---

[8]     The complaint against medical defendants Odunsi, Walkey, Jenkins, Menghisteab, Shuman, and Black shall be dismissed.

exhaustion prerequisites of § 1997e(a), and his claims must be dismissed unless he can show that he has satisfied the administrative exhaustion requirement or that Defendants have forfeited their right to raise non-exhaustion as a defense. *See Chase v. Peay,* 286 F. Supp. 2d 523, 528 (D. Md. 2003), *aff'd,* 98 Fed. Appx. 253 (4th Cir. 2004) (per curiam).   Under *Chase,* a Maryland inmate may satisfy exhaustion by seeking review of an Administrative Remedy Procedure ("ARP") complaint denial from the Warden to the Commissioner and then appealing the Commissioner's decision to the Inmate Grievance Office ("IGO"), the *final level* of appeal within Maryland's administrative grievance system for prisoners. *Id*. at 529 (emphasis added).

In addition, the high court has recently expounded on the exhaustion issue, finding that prisoners must complete the administrative review process, "using all steps that the agency holds out and doing so properly." *Woodford v. Ngo*, 126 S.Ct. 2378, 2385 (2006) (quoting *Pozo v. McCauyhtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)).   It concluded that proper exhaustion of administrative remedies demands compliance with an agency's deadlines and other critical procedural rules because "no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Ngo*, 126 S.Ct. at 2385-86 (2006).   Exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner.   Rather, the "failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by the defendant." *Anderson v. XYZ Correctional Health Services, Inc.*, 407 F.3d 678, 683 (4th Cir. 2005).

The State defendants claim that plaintiff has failed to fully exhaust his administrative remedies as to each and every issue.  Their documents establish that plaintiff had arguably filed administrative remedies at the institutional level regarding the commitment calculation of his sentence, his need for an exhaust fan, his prescription refills, mail deliveries, law library adequacy, medical care, and the hold on funds deposited to an inmate's account.  Paper No. 25, Exs. 1.2-1.13.  In his recent summary judgment motion, plaintiff seemingly argues the administrative remedy process is invalid because it was not enacted under the Maryland APA.  Paper No. 60.  He further represents, through the submission of exhibits, that he has exhausted his administrative remedies.  *Id.*  The documents submitted by plaintiff, however, fail to rebut the State defendants' submissions and do not convincingly show that he presented claims through the remedial process to DOC Headquarters or to the IGO.  *Id.*, Exs. E & I.  Therefore, plaintiff's claims against the State defendants are subject to dismissal for failure to exhaust administrative remedies.  The State defendants' motion to dismiss shall be granted.  The claims raised against the State defendants shall be dismissed without prejudice.[9]

---

[9]    Plaintiff has been afforded the opportunity to respond to the State defendants's materials and has filed extensive responsive and dispositive pleadings.  After review of these voluminous materials, the court notes that there are no definitive allegations showing that the State officials named as defendants, *e.g.*, Secretary, Commissioner, and Wardens, had any personal knowledge of the alleged unconstitutional actions.

III. *Conclusion*

For the aforementioned reasons, the CMS motion for summary judgment and the state defendants' motion to dismiss are hereby granted.[10]  A separate Order follows.


  September 29, 2006                                              /s/                            
Date                                               Catherine C. Blake
                                                   United States District Judge

---

[10]     On August 14, 2006, plaintiff filed a motion for appointment of counsel or, in the alternative, motion for class certification.   Paper No. 65.   In light of plaintiff's pro se status, the extensive pleadings plaintiff has filed, and the findings of the court, the motions shall be denied.